# EXHIBIT A



### NAILAH K. BYRD
### CUYAHOGA COUNTY CLERK OF COURTS
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**New Case Electronically Filed:**
**November 22, 2017 11:24**

By: THOMAS W. WRIGHT 0017529

Confirmation Nbr. 1232713

PREMIER DEVELOPMENT PARTNERS, LLC        CV 17 889462

       vs.

ACUITY, A MUTUAL INSURANCE  COMPANY      **Judge:**  STEVEN E. GALL

**Pages Filed:**  43

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| PREMIER DEVELOPMENT PARTNERS, LLC, <br> 5301 Grant Avenue, Suite 100 <br> Cleveland, OH 44125 <br><br>             Plaintiff, <br><br> -vs- <br><br> ACUITY, A MUTUAL INSURANCE COMPANY, <br> 2800 South Taylor Drive, <br> Sheboygan, WI 53081 <br><br>             Defendant. | ) CASE NO. <br> ) <br> ) JUDGE <br> ) <br> ) <br> ) <br> ) <br> ) **COMPLAINT FOR DECLARATORY** <br> ) **JUDGMENT AND OTHER RELIEF** <br> ) <br> ) *Jury Demand Endorsed Herein* <br> ) <br> ) <br> ) <br> ) |

Now comes Plaintiff Premier Development Partners, LLC ("Premier"), by and through counsel, for its Complaint against Defendant Acuity, A Mutual Insurance Company ("Acuity"), and states as follows:

## THE PARTIES

1. Premier is an Ohio limited liability company in the design-build, construction, and commercial real estate business, with its primary place of business located at 5301 Grant Avenue, Cleveland, OH 44125.

2. Acuity is a Wisconsin corporation with its primary place of business located at 2800 South Taylor Drive, Sheboygan, WI 53081, that provides commercial insurance to businesses across the United States, including in Ohio.

1

## THE POLICIES

3. Acuity issued Commercial Package Insurance Policies to Dyna Floor Systems, Inc. ("Dyna Floor"), Policy Number X28232, for each of the years 2011 through 2016 (the "Policies"). These Policies exceed 800-pages in total length and are therefore too voluminous to attach to this Complaint. Copies of these Policies will be made available upon request of the Court or any party.

4. Included in each of the Policies was a Bis-Pak Business Liability and Medical Expenses Coverage Form which provided liability coverage for an insured for bodily injury or property damage up to $1,000,000 per occurrence. An example of this Form from the 2011 Policy is attached hereto as **Exhibit A** for reference. Upon information and belief, the 2011 Form is, if not identical, substantially similar in all relevant parts to the Forms in the subsequent Policy years.

## JUSRIDICTION & VENUE

5. This is an action for a declaratory judgment brought pursuant to R.C. 2721.01, et seq., wherein Premier seeks a declaration of its rights and legal relations arising out of the Acuity Policies.

6. As outlined below, the activities that give rise to the instant claims arose in Cuyahoga County.

## THE UNDERLYING ARBITRATION

7. On or about June 9, 2015, Valtronic Technologies, Inc. ("Valtronic") initiated arbitration proceedings against Premier with the American Arbitration Association ("AAA"), Case No. 01-15-0003-8136 (the "Valtronic Arbitration").

8. Valtronic's claims against Premier arose from the 2012 build-out for new space at the

2

Valtronic facility (the "Facility") located at 29200 Fountain Parkway, Solon, Ohio 44139 (hereinafter, the "Project").

9. Valtronic entered into a Construction Agreement with Premier to serve as the general contractor for the Project.

10. Part of the Project included the installation of an electrostatic dissipative ("ESD") floor, which is intended to prevent static electricity from interfering with the manufacturing process at the Valtronic Facility.

11. Premier subcontracted with Dyna Floor for the installation of the flooring system at the Valtronic facility.

12. The terms of this agreement are contained in an August 24, 2012 AIA Standard Subcontractor Agreement between Premier and Dyna Floor. A copy of this Subcontractor Agreement is attached hereto as **Exhibit B**.

13. Among the terms of this Subcontractor Agreement was the following indemnification provision:

> ### § 4.6  INDEMNIFICATION
> § 4.6.1 To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Premier, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses, lawsuits (including the defense thereof), and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 4.6.

3

14. In addition, the Subcontractor Agreement required Dyna Floor to purchase and maintain

insurance as follows:

**ARTICLE 13 INSURANCE AND BONDS**
§ 13.1 The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability naming Premier Development Partners, LLC and Valtronic Technologies (USA) Inc. as additional insured:

Upon execution of this Agreement, and prior to the Subcontractor's commencing any work or services with regard to the Project, the Subcontractor shall carry commercial general liability insurance on ISO form CG 00 1 0 01 (or a substitute form providing equivalent coverage) and the Subcontractor shall provide the contractor with a Certificate of Insurance and Additional Insured Endorsement on the combination of ISO forms CG 2010 10/01 and CG 2037 10/01 (or substitute forms providing equivalent coverage) naming the Contractor and the Owner as Additional Insureds hereunder. Additional insured coverage shall apply as primary insurance with respect to and other insurance afforded to Owner and Contractor. The coverage available to the Contractor and Owner, as Additional Insureds, shall not be less than $3,000,000 Each Occurrence, $3,000,000 General Aggregate (subject to a per project general aggregate provision applicable to the project), $3,000,000 Products Completed Operations Aggregate and $3,000,000 Personal and Advertising Injury limits. Such insurance shall cover liability arising from premises, operations, independent contractors, products-completed operations, personal and advertising injury, and liability assumed under an insured contract (including the tort liability of another assumed in a business contract). There shall be no endorsement or modification of the Commercial General Liability form arising from pollution, explosion, collapse, underground property damage or work performed by subcontractors. All coverage shall be placed with an insurance company duly admitted in the State of Ohio and shall be reasonably acceptable to Contractor. All Subcontractor insurance carriers must be "A" rated. Coverage shall be afforded to the Additional Insureds whether or not a claim is in litigation.

Each Certificate of insurance shall provide that the insurer must give the Contractor at least 30 days' prior written notice of cancellation and termination of the Contractor's coverage thereunder. Not less than two weeks prior to the expiration, cancellation or termination of any such policy, the Subcontractor shall supply the Contractor with a new and replacement Certificate of Insurance and Additional Insured endorsement as proof of renewal and said of original policy. Said new and replacement

4

endorsements shall be similarly endorsed in favor of Contractor and Owner as set forth above.

Additionally, and prior to commencement of the Work, the Subcontractor shall provide the Contractor with a Certificate of Insurance showing liability insurance coverage for the Subcontractor and any employees, agents, or Sub-Subcontractors of the Subcontractor for any Workers' Compensation, Employer's Liability and Automobile Liability. In the event any of these policies are terminated, Certificates of insurance showing replacement coverage shall be provided to Contractor. Coverages shall be no less than the following:

> Worker's Compensation and Employers' Liability Insurance: As required by law and affording thirty (30) days written notice to Contractor prior to cancellation or non-renewal, providing coverage of not less than $500,000 for bodily injury caused by accident and $500,000 for bodily injury by disease.

> Business Auto Liability Insurance: Written in the amount of not less than $1,000,000 each accident.

Waiver of Subrogation: Subcontractor shall obtain from each of its insurers a waiver of subrogation on Commercial General Liability in favor of Contractor and Owner with respect to Losses arising out of or in connection with the Work.

§ 13.2 Coverages, whether written on an occurrence or claims-made basis shall be maintained without interruption from date of commencement of the Subcontractor's Work until date of final payment and termination of any coverage required to be maintained after final payment to the Subcontractor, but if such insurance is made on a claims made basis, Subcontractor shall furnish an extended reporting endorsement (tail coverage) for at least two years from and after completion of all Work under the Prime Contract.

15. In the Valtronic Arbitration, Valtronic has raised claims against Premier based on allegations that the ESD floor was improperly installed pursuant to the manufacturer's specifications.

16. In the Valtronic Arbitration, Valtronic seeks damages against Premier for, inter alia, property damage, consequential property damage, loss of productivity, loss of future business income, etc.

5

17. Based on the Subcontractor Agreement, Dyna Floor is required to indemnify and otherwise hold Premier harmless from these claims by Valtronic.

18. Based on the above Subcontractor Agreement, Dyna Floor was required to obtain insurance coverage for the Project naming Premier as an additional insured.

19. To date, Acuity continues to refuse to defend and indemnify Premier for the claims in the Valtronic Arbitration.

## <u>COVERAGE UNDER THE POLICIES THE CLAIMS IN THE VALTRONIC ARBITRATION</u>

20. The relevant Bis-Pak Business Liability and Medical Expenses Form in the Acuity Policies provides:

    **1.**     **Business Liability**

        a.     We [Acuity] will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury, property damage* or *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages.

21. Under the Liability and Medical Expenses Coverage Section of this Form, Section 1.b. provides as follows, in pertinent part:

        b.     This insurance applies:

            (1)     To *bodily injury* or *property damage* only if:

                (a)     The *bodily injury* or *property damage* is caused by an occurrence that takes place in the coverage territory; and

                (b)     The *bodily injury* or *property damage* occurs during the policy period.

22. Under the Exclusions Section of this Form, Section 1.b. provides as follows, in pertinent part:

    **This Insurance does not apply to:**

6

     **b.**     Contractual Liability

*Bodily injury* or *property damage* for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

*     *     *

(2)    Assumed in a contract or agreement that is an *insured contract*, provided the *bodily injury* or *property damage* occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an *insured contract*, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of *bodily injury* or *property damage*, provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same *insured contract*; and

(b) Such attorney fees and litigations are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

23. Under the Liability and Medical Expenses Definition Sections of these Policies, the following definitions are relevant:

    **9.**     "Insured contract" means:

*     *     *

    **f.**     That part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for *bodily injury* or *property damage* to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*     *     *

    **18.**    "Suit" means a civil proceeding in which damages because of *bodily injury, property damage,* or *personal and advertising injury* to which this insurance applies. *Suit* includes:

7

        a.      An arbitration proceeding in which such damages are claimed and to which the *insured* must submit or does submit with our consent

24. The Subcontractor Agreement between Premier and Dyna Floor is an "insured contract" because it is a contract wherein Dyna Floor assumed the tort liability of Premier to pay for bodily injury or property damages to a third person or organization.

25. The Valtronic Arbitration constitutes a "suit" under the above Policies.

26. The claims in the Valtronic Arbitration therefore constitute claims for property damage caused by an occurrence to which the insurance in the Acuity Policies apply.

27. Thus, Premier is entitled to a defense and indemnity from Acuity for the claims in the Valtronic Arbitration.

28. Premier reserves the right to assert additional bases for coverage under the Acuity Policies based on further discovery or research in this lawsuit.

## ACUITY'S REFUSAL TO HONOR THE CLAIM

29. On or about May 23, 2017 and May 25, 2017, Premier tendered the defense and indemnity of the claims in the Valtronic Arbitration to Acuity pursuant to the above Policies.

30. On or about June 23, 2017, Acuity issued a denial of Premier's tender of the defense and indemnity of the claims in the Valtronic Arbitration.

## FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT

31. Premier re-alleges each and every preceding paragraph as if fully rewritten herein.

32. The Policies are enforceable contracts between Premier and Acuity.

33. The claims in the Valtronic Arbitration described herein are claims for a Covered Loss under the Policies.

8

34. The Policies require that Acuity defend and indemnify Premier for the claims in the Valtronic Arbitration.

35. Acuity has, without good cause, refused to do so.

WHEREFORE, Premier prays for a declaratory judgment, finding that Acuity is required under the Policies to defend and indemnify Premier for the claims in the Valtronic Arbitration.

## SECOND CAUSE OF ACTION: BREACH OF CONTRACT

36. Premier re-alleges each and every preceding paragraph as if fully rewritten herein.

37. The Policies, as attached, are enforceable contracts between Premier and Acuity.

38. The Policy provides $1,000,000 in coverage for claims of property damage.

39. In refusing to defend and indemnify Premier for the claims in the Valtronic Arbitration, which are valid claims arising under the Policies, Acuity has breached the terms of that contract.

WHEREFORE, Premier prays for judgment against Acuity for compensatory damages in an amount to exceed $25,000, together with interest and costs incurred in this action, including attorneys' fees.

## THIRD CAUSE OF ACTION: BAD FAITH DENIAL OF INSURANCE COVERAGE

40. Premier re-alleges each and every preceding paragraph as if fully rewritten herein.

41. Acuity is acting in bad faith in refusing to defend and indemnify Premier for the claims in the Valtronic Arbitration when such refusal is not predicated upon circumstances that furnish reasonable justification under the Policies.

42. Acuity is acting with actual malice in denying coverage for the claims in the Valtronic Arbitration.

9

WHEREFORE, Premier prays for judgment against Acuity for damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), together with interest, costs incurred in this action, including attorneys' fees and punitive damages.

### JURY DEMAND

Premier hereby demands a trial by jury consisting of the maximum number of jurors allowed by law.

Respectfully submitted,

*/s/ Thomas W. Wright*
THOMAS W. WRIGHT (0017529)
MATTHEW P. BARINGER (0082694)
**DAVIS & YOUNG**
29010 Chardon Road
Willoughby Hills, OH 44092
Ph:  (216) 348-1700
Fax: (216) 621-0602
E-mail: twright@davisyoung.com

*Attorneys for Plaintiff Premier*
*Development Partners, LLC*

### INSTRUCTIONS FOR SERVICE

Please issue service of summons upon the Defendant at the address listed in the caption above by certified mail, return receipt requested.

*/s/ Thomas W. Wright*
THOMAS W. WRIGHT (0017529)
MATTHEW P. BARINGER (0082694)
*Attorneys for Plaintiff Premier*
*Development Partners, LLC*

10

# EXHIBIT A

## BIS-PAK BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

**Index of Policy Provisions**

Page

LIABILITY AND MEDICAL EXPENSES COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1-3

EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3-9

WHO IS AN INSURED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-11

LIABILITY AND MEDICAL EXPENSES LIMITS OF
INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

LIABILITY AND MEDICAL EXPENSES GENERAL
CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11-12

LIABILITY AND MEDICAL EXPENSES
DEFINITIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12-15

## BIS-PAK BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under the Who Is An Insured Section of this policy.

Other words and phrases that appear in italics have special meaning. Refer to the Liability and Medical Expenses Definitions Section.

## LIABILITY AND MEDICAL EXPENSES COVERAGES

### 1. Business Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury, property damage* or *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury, property damage* or *personal and advertising injury* to which this insurance does not apply. We may at our discretion investigate any *occurrence* or offense and settle any claim or *suit* that may result. But:

  (1) The amount we will pay for damages is limited as described in the Liability and Medical Expenses Limits of Insurance Section; and

  (2) Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or medical expenses.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments.

b. This insurance applies:

  (1) To *bodily injury* or *property damage* only if:

    (a) The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the *coverage territory;* and

    (b) The *bodily injury* or *property damage* occurs during the policy period.

    (c) Prior to the policy period, no insured listed under item 1 of Who Is An Insured and no *employee* authorized by you to give or receive notice of an *occurrence* or claim, knew that the *bodily injury* or *prop-*

*erty damage* had occurred, in whole or in part. If such a listed insured or authorized *employee* knew, prior to the policy period, that the *bodily injury* or *property damage* occurred, then any continuation, change or resumption of such *bodily injury* or *property damage* during or after the policy period will be deemed to have been known before the policy period.

  (2) To *personal and advertising injury* caused by an offense arising out of your business, but only if the offense was committed in the *coverage territory* during the policy period.

c. *Bodily injury* or *property damage* which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under item 1 of Who Is An Insured or any *employee* authorized by you to give or receive notice of an *occurrence* or claim, includes any continuation, change or resumption of *bodily injury* or *property damage* after the end of the policy period.

d. *Bodily injury* or *property damage* will be deemed to have been known to have occurred at the earliest time when any insured listed under item 1 of Who Is An Insured or any *employee* authorized by you to give or receive notice of an *occurrence* or claim:

  (1) Reports all, or any part, of the *bodily injury* or *property damage* to us or any other insurer;

  (2) Receives a written or verbal demand or claim for damages because of the *bodily injury* or *property damage;* or

  (3) Becomes aware by any other means that *bodily injury* or *property damage* has occurred or has begun to occur.

e. Damages because of *bodily injury* include damages claimed by any person or organization for care, loss of services or death resulting at any time from the *bodily injury.*

f.  **Coverage Extension - Supplementary Payments**

(1)  We will pay, with respect to any claim we investigate or settle, or any *suit* against an insured we defend:

(a)  All expenses we incur.

(b)  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for *bodily injury* applies. We do not have to furnish these bonds.

(c)  The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

(d)  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or *suit*, including actual loss of earnings up to $250 a day because of time off from work.

(e)  All costs taxed against the insured in the *suit*.

(f)  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(g)  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

(2)  If we defend an insured against a *suit* and an indemnitee of the insured is also named as a party to the *suit*, we will defend that indemnitee if all of the following conditions are met:

(a)  The *suit* against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an *insured contract;*

(b)  This insurance applies to such liability assumed by the insured;

(c)  The obligation to defend, or the cost of the defense of, that indem-

nitee has also been assumed by the insured in the same *insured contract;*

(d)  The allegations in the *suit* and the information we know about the *occurrence* are such that no conflict appears to exist between the interests of the insured and the interest of the indemnitee;

(e)  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such *suit* and agree that we can assign the same counsel to defend the insured and the indemnitee; and

(f)  The indemnitee:

(i)  Agrees in writing to:

i.  Cooperate with us in the investigation, settlement or defense of the *suit;*

ii.  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the *suit;*

iii.  Notify any other insurer whose coverage is available to the indemnitee; and

iv.  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(ii)  Provides us with written authorization to:

i.  Obtain records and other information related to the *suit;* and

ii.  Conduct and control the defense of the indemnitee in such *suit*.

(3)  So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 1b(2) of Exclusions, such payments will not be deemed to be damages for *bodily injury* and *property damage* and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys'

fees and necessary litigation expenses as Supplementary Payments ends when:

(a) We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

(b) The conditions set forth above, or the terms of the agreement described in paragraph (2)(f) above, are no longer met.

2. **Medical Expenses**

a. We will pay medical expenses as described below for *bodily injury* caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the *coverage territory* and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the Limit of Insurance. We will pay reasonable expenses for:

(1) First aid at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

## EXCLUSIONS

1. **Applicable to Business Liability Coverage**

**This Insurance does not apply to:**

a. Expected or Intended Injury

*Bodily injury* or *property damage* expected or intended from the standpoint of the insured. This exclusion does not apply to *bodily injury* resulting from the use of reasonable force to protect persons or property.

b. Contractual Liability

*Bodily injury* or *property damage* for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an *insured contract*, provided the *bodily injury* or *property damage* occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an *insured contract*, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of *bodily injury* or *property damage*, provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same *insured contract*; and

(b) Such attorney fees and litigation expenses are for defense of that

party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. Liquor Liability

*Bodily injury* or *property damage* for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing of alcoholic beverages.

d. Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. Employers' Liability

*Bodily injury* to:

(1) An employee of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an *insured contract.*

f.  Pollution

(1) *Bodily injury* or *property damage* arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants:*

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) *Bodily injury* if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) *Bodily injury* or *property damage* for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) *Bodily injury* or *property damage* arising out of heat, smoke or fumes from a *hostile fire;*

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the *pollutants* are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) *Bodily injury* or *property damage* arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of *mobile equipment* or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

(ii) *Bodily injury* or *property damage* sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) *Bodily injury* or *property damage* arising out of heat, smoke or fumes from a *hostile fire.*

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing op-

erations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants.*

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand or order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of *pollutants;* or

    (b) Claim or *suit* by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of *pollutants.*

However, this paragraph does not apply to liability for damages because of *property damage* that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or *suit* by or on behalf of a governmental authority.

g. Aircraft, Auto or Watercraft

*Bodily injury* or *property damage* arising out of the ownership, maintenance, use or entrustment to others of any aircraft, *auto* or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and *loading or unloading.*

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the *occurrence* which caused the *bodily injury* or *property damage* involved the ownership, maintenance, use or entrustment to others of any aircraft, *auto* or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) Watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 51 feet long; and

    (b) Not being used to carry persons or property for a charge.

(3) Parking an *auto* on, or on the ways next to premises you own or rent, provided the *auto* is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any *insured*

*contract* for the ownership, maintenance or use of aircraft or watercraft; or

(5) *Bodily injury* or *property damage* arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of *mobile equipment* if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

    (b) The operation of any of the following machinery or equipment:

        (i) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        (ii) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

h. Mobile Equipment

*Bodily injury* or *property damage* arising out of:

(1) The transportation of *mobile equipment* by an *auto* owned or operated by or rented or loaned to any insured; or

(2) The use of *mobile equipment* in, or while in practice for, or while being prepared for, any prearranged racing, speed or stunting activity.

i. War

*Bodily injury*, *property damage* or *personal and advertising injury*, however caused, arising, directly or indirectly, out of:

(1) War, including undeclared war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

j. Professional Services

*Bodily injury*, *property damage* or *personal and advertising injury* due to rendering or failure to render any professional service. This includes but is not limited to:

Electronically Filed 11/22/2017 11:24 / / CV 17 889462 / Confirmation Nbr. 1232713 / CLDMK

(1) Legal, accounting, advertising, counseling, consulting services or funeral home services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

(5) Any health or therapeutic service, treatment, advice or instruction including but not limited to physiotherapy, massage, chiropody, or the operation or use of suntanning booths or equipment;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of opthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services, barber and beauty shops;

(9) Services in the practice of pharmacy, but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

(10) Services in connection with the selling, licensing, franchising or furnishing of your computer software including electronic data processing programs, designs, specifications, manuals and instructions.

(11) Data processing services rendered by, or that should have been rendered by:

   (a) The insured; or

   (b) Any person or organization:

      (i) For whose acts, errors or omissions the insured is legally responsible; or

      (ii) From whom the insured assumed liability by reason of a contract or agreement.

(12) The rendering of, or failure to render, electronic data processing, computer consulting or computer programming services, advice or instruction by:

   (a) The insured; or

   (b) Any person or organization:

      (i) For whose acts, errors or omissions the insured is legally responsible; or

      (ii) From whom the insured assumed liability by reason of a contract or agreement.

**k.** Damage to Property

*Property damage* to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the *property damage* arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of any insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the *property damage* arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because *your work* was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to *property damage* (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in paragraph 3 under the Liability And Medical Expenses Limits Of Insurance Section.

Paragraph (2) of this exclusion does not apply if the premises are *your work* and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to *property damage* included in the *products-completed operations hazard.*

**l.** Damage to Your Product

*Property damage* to *your product* arising out of it or any part of it.

**m.** Damage to Your Work

*Property damage* to *your work* arising out of it or any part of it and included in the *products-completed operations hazard.*

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n. Damage to Impaired Property or Property Not Physically Injured

*Property damage* to *impaired property* or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in *your product* or *your work;* or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to *your product* or *your work* after it has been put to its intended use.

o. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) *Your product;*

(2) *Your work;* or

(3) *Impaired property;*

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

p. Personal and Advertising Injury

*Personal and advertising injury:*

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict *personal and advertising injury;*

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

(5) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your *advertisement;*

(6) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your *advertisement;*

(7) Arising out of the wrong description of the price of goods, products or services stated in your *advertisement;*

(8) Committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of websites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to paragraphs a, b and c of Definition 14 *Personal and advertising injury* under Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

(9) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants* at any time.

(10) With respect to any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way responding to, or assessing the effects of *pollutants.*

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of *pollutants.*

(11) Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control.

(12) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply

Electronically Filed 11/22/2017 11:24 /  / CV 17 889462 / Confirmation Nbr. 1232713 / CLDMK

to infringement, in your *advertisement*, of copyright, trade dress or slogan.

(13) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q.** Suntanning Operations

*Bodily injury, personal and advertising injury* or *property damage* arising out of the ownership, operation or use of any suntanning booth or suntanning device.

**r.** Lead

*Bodily injury, property damage, personal and advertising injury* arising out of the actual, alleged or threatened ingestion, inhalation, absorption, exposure or presence of lead in any form or from any source.

Coverage also does not apply to any loss, cost, expense, fine or penalty arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, dispose of or in any way respond to or assess the effects of lead in any form; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, disposing of or in any way responding to or assessing the effects of lead in any form.

**s.** Electronic Data

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy discs, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**t.** Criminal Acts

*Personal and advertising injury* arising out of a criminal act committed by or at the direction of the insured.

**u.** Distribution of Material in Violation of Statutes

*Bodily injury, property damage,* or *personal and advertising injury* arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions c, d, e, f, g, h, i, k, l, m, n and o do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in the Limits of Insurance Section of this Coverage Form.

**2. Applicable to Medical Expenses Coverage**

We will not pay expenses for *bodily injury:*

**a.** To any insured, except *volunteer workers.*

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an *employee* of any insured, if benefits for the *bodily injury* are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while practicing, instructing or participating in any physical exercises or games, sports or taking part in athletic contests.

**f.** Included within the *products-completed operations hazard.*

**g.** Excluded under Business Liability Coverage.

**3. Applicable to Both Business Liability Coverage and Medical Expenses Coverage - Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to *bodily injury* or *property damage:*

(1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its

Electronically Filed 11/22/2017 11:24 / / CV 17 889462 / Confirmation Nbr. 1232713 / CLDMK

Limit of Liability; or

(2) Resulting from the *hazardous properties* of *nuclear material* and with respect to which:

   (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

   (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

b. Under Medical Expenses Coverage, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

c. Under Business Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of *nuclear material,* if:

  (1) The *nuclear material:*

   (a) Is at any *nuclear facility* owned by or operated by or on behalf of an insured; or

   (b) Has been discharged or dispersed therefrom;

  (2) The *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

  (3) The *bodily injury* or *property damage* arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear facility,* but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

d. As used in this exclusion:

  *"Byproduct material"* has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

  *"Hazardous properties"* include radioactive, toxic or explosive properties;

  *"Nuclear facility"* means:

  (1) Any *nuclear reactor;*

(2) Any equipment or device designed or used for:

   (a) Separating the isotopes of uranium or plutonium;

   (b) Processing or utilizing *spent fuel;* or

   (c) Handling, processing or packaging *waste;*

(3) Any equipment or device used for the processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of *waste;*

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

*"Nuclear material"* means *source material, special nuclear material* or *byproduct material;*

*"Nuclear reactor"* means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*"Property damage"* includes all forms of radioactive contamination of property;

*"Source material"* has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

*"Special nuclear material"* has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

*"Spent fuel"* means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor;*

*"Waste"* means any waste material:

(1) Containing *byproduct material* other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its *source material* content; and

(2) Resulting from the operation by any person or organization of any *nuclear facility* included under paragraphs (1) and (2) of the definition of *nuclear facility.*

## WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your *executive officers* and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your *volunteer workers* only while performing duties related to the conduct of your business, or your *employees* other than either your *executive officers* (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these *employees* or *volunteer workers* are insureds for:

      (1) *Bodily injury* or *personal and advertising injury:*

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-*employee* while in the course of his or her employment or performing duties related to the conduct of your business, or to your other *volunteer workers* while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-*employee* as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay dam-

ages because of the injury described in paragraphs (1)(a) or (b); or

         (d) Arising out of his or her providing or failing to provide professional health care services. However, if you have *employees* who are pharmacists in your retail druggist or drugstore operation, they are insured with respect to their providing or failing to provide professional health care services; or

      (2) *Property damage* to property:

         (a) Owned, occupied or used by; or

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your *employees, volunteer workers*, any partner or member (if you are a partnership or joint venture) or any member (if you are a limited liability company).

   b. Any person (other than your *employee* or *volunteer worker*) or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. Any organization you newly acquire or form, other than a partnership, limited liability company or joint venture and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage does not apply to *bodily injury* or *property damage* that occurred before you acquired or formed the organization; and

   c. Coverage does not apply to *personal and advertising injury* arising out of an offense committed before you acquired or formed the organization.

Electronically Filed 11/22/2017 11:24 / / CV 17 889462 / Confirmation Nbr. 1232713 / CLDMK

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or *suits* brought; or

   c. Persons or organizations making claims or bringing *suits*.

2. The most we will pay for the sum of all damages because of all:

   a. *Bodily injury, property damage* and medical expenses arising out of any one *occurrence;* and

   b. *Personal and advertising injury* sustained by any one person or organization;

   is the Liability and Medical Expenses Limit shown in the Declarations. But the most we will pay for all medical expenses because of *bodily injury* sustained by any one person is the Medical Expenses Limit shown in the Declarations.

3. The most we will pay under Business Liability Coverage for damages because of *property damage* to a premises while rented to you or in the case of a fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You Limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the Damage To Premises Rented To You Limit shown in the Declarations.

4. **Aggregate Limits**

   a. The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for injury or damage under the *products-completed operations hazard* arising from all *occurrences* during the policy period.

   b. The General Aggregate Limit shown in the Declarations is the most we will pay for the sum of all damages because of all:

      (1) *Bodily injury, property damage* and medical expenses arising from all *occurrences* during the policy year. This limit applies separately to:

         (a) Each location owned by or rented to you. A location is a premises involving the same or connecting lots, or a premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad; and

         (b) Each of your projects away from a location owned by or rented to you; or

      (2) *Personal and advertising injury* arising out of all offenses committed during the policy period.

   The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS

We have no duty to provide coverage under this Coverage Part unless you and any other involved insured have fully complied with the Conditions contained in this Coverage Part.

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties in the Event of Occurrence, Offense, Claim or Suit**

   a. You must see to it that we are notified as soon as practicable of an *occurrence* or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the *occurrence* or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the *occurrence* or offense.

   b. If a claim is made or *suit* is brought against any insured, you must;

      (1) Immediately record the specifics of the claim or *suit* and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or *suit* as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or *suit;*

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the *suit;* and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a *suit* asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Separation of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this policy to the First Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or *suit* is brought.

5. **Premium Audit - Business Liability**

a. We will compute all premiums for this Coverage Form in accordance with our rules and rates.

b. Premium shown in this Coverage Form as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. If a premium payment is due, we will send notice to the First Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the First Named Insured.

c. The First Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

## LIABILITY AND MEDICAL EXPENSES DEFINITIONS

1. *"Advertisement"* means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. *"Auto"* means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, *auto* does not include *mobile equipment.*

3. *"Bodily injury"* means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. *"Coverage territory"* means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in paragraph a above; or

c. All parts of the world if:

Electronically Filed 11/22/2017 11:24 / / CV 17 889462 / Confirmation Nbr. 1232713 / CLDMK

The injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a above; or

(2) The activities of a person whose home is in the territory described in a above, but is away for a short time on your business; and

(3) *"Personal and advertising injury"* offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a *suit* on the merits in the territory described in a above or in a settlement we agree to.

5. *"Employee"* includes a *leased worker. Employee* does not include a *temporary worker.*

6. *"Executive officer"* means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. *"Hostile fire"* means one which becomes uncontrollable or breaks out from where it was intended to be.

8. *"Impaired property"* means tangible property, other than *your product* or *your work,* that cannot be used or is less useful because:

a. It incorporates *your product* or *your work* that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of *your product* or *your work;* or

b. Your fulfilling the terms of the contract or agreement.

9. *"Insured contract"* means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an *insured contract.*

b. A sidetrack agreement.

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement; or

f. That part of any other contract or agreement pertaining to your business (including

an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for *bodily injury* or *property damage* to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f does not include that part of any contract or agreement:

(1) That indemnifies a railroad for *bodily injury* or *property damage* arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services.

10. *"Leased worker"* means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. *Leased worker* does not include a *temporary worker.*

11. *"Loading or unloading"* means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or *auto;*

b. While it is in or on an aircraft, watercraft or *auto;* or

c. While it is being moved from an aircraft, watercraft or *auto* to the place where it is finally delivered.

But *loading or unloading* does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or *auto.*

12. *"Mobile equipment"* means any of the following

types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers.

**e.** Vehicles not described in a, b, c or d above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers.

**f.** Vehicles not described in a, b, c or d above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not *mobile equipment* but will be considered *autos:*

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, *mobile equipment* does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered *autos.*

**13.** *"Occurrence"* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** *"Personal and advertising injury"* means injury, including consequential *bodily injury,* arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your *advertisement;* or

**g.** Infringing upon another's copyright, trade dress or slogan in your *advertisement.*

**15.** *"Pollutants"* mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** *"Products-completed operations hazard":*

**a.** Includes all *bodily injury* and *property damage* occurring away from premises you own or rent and arising out of *your product* or *your work* except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned. However, *your work* will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The *bodily injury* or *property damage* must occur away from premises you own or rent, unless your business includes the selling,

handling or distribution of *your product* for consumption on premises you own or rent.

b. Does not include *bodily injury* or *property damage* arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the *loading or unloading* of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

17. *"Property damage"* means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. *"Suit"* means a civil proceeding in which damages because of *bodily injury, property damage,* or *personal and advertising injury* to which this insurance applies are alleged. *Suit* includes:

a. An arbitration proceeding in which such damages are claimed and to which the *insured* must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the *insured* submits with our consent.

19. *"Temporary worker"* means a person who is furnished to you to substitute for a permanent *employee* on leave or to meet seasonal or short-term workload conditions.

20. *"Volunteer worker"* means a person who is not your *employee,* and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. *"Your product"* means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

*Your product* includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your product;* and

b. The providing of or failure to provide warnings or instructions.

*Your product* does not include vending machines or other property rented to or located for the use of others but not sold.

22. *"Your work"* means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

*Your work* includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your work;* and

b. The providing of or failure to provide warnings or instructions.

Electronically Filed 11/22/2017 11:24 / / CV 17 889462 / Confirmation Nbr. 1232713 / CLDMK

# EXHIBIT B

# ᛜᚨAIA® Document A401™ – 2007

## *Standard Form of Agreement Between Contractor and Subcontractor*

**AGREEMENT** made as of the Twenty-seventh day of August  in the year 2012(In words, indicate day, month and year)

**BETWEEN the Contractor:**
*(Name, address and other information)*

Premier Development Partners, LLC
5301 Grant Avenue
Cleveland, OH  44125
(hereinafter referred to as "Contractor" or  "Premier")

and the Subcontractor:
*(Name, address and other information)*

DynaFloor Systems, Inc.
553 East Highland Road
Macedonia, OH  44056

The Contractor has made a contract for construction dated:

With the Owner:
*(Name, address and other information)*

Valtronic Technologies (USA) Inc.
29200 Fountain Parkway
Solon, Ohio 44139

For the following Project:
*(Include detailed description of Project, location and address)*

Valtronic Technologies (USA) Inc.
29200 Fountain Parkway
Solon, OH  44139

which Contract is hereinafter referred to as the Prime Contract and which provides for the furnishing of labor, materials, equipment and services in connection with the construction of the Project. A copy of the Prime Contract, consisting of the Agreement Between Owner and Contractor (redacted to delete terms and conditions unrelated to this Subcontract) and the other Contract Documents, to the extent relevant to this Subcontract,  have been made available to the Subcontractor.

The Architect for the Project is:
*(Name, address and other information)*

Davison Smith Certo
26031 B Center Ridge Road
Westlake, Ohio 44145
The Contractor and the Subcontractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference.

This document has been approved and endorsed by the Associated Specialty Contractors, Inc.

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978  1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:31:06 on 08/27/2012 under Order No.6282180999_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                                             (1433946497)

Init.

/

1

| (Paragraphs deleted)
### ARTICLE 1    THE SUBCONTRACT DOCUMENTS
§ **1.1** The Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other relevant Contract Documents (redacted as indicated above); (3) Modifications issued subsequent to the execution of the Agreement between the Owner and Contractor, whether before or after the execution of this Agreement; (4) other documents listed in Article 16 of this Agreement; and (5) Modifications to this Subcontract issued after execution of this Agreement. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Subcontract Documents, other than Modifications issued subsequent to the execution of this Agreement, appears in Article 16.

§ **1.2** Except to the extent of a conflict with a specific term or condition contained in the Subcontract Documents, the General Conditions governing this Subcontract shall be the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement. The intent of the Subcontract Documents is to include all items necessary for the proper execution and completion of the Work, including all incidental work necessary for the completion of the Work even though not specifically described in the Subcontract Documents. The Subcontract Documents are complementary; what is required by one shall be as binding as if required by all. The organization and arrangement of the Subcontract Documents shall not control Premier Development Partners in dividing the work among the subcontractors or in establishing the extent of work to be performed by a subcontractor.

§ **1.3** The Subcontract may be amended or modified only by a Modification signed by both parties hereto, and not by e-mail. The Subcontract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and the Subcontractor, (2) between the Owner and the Subcontractor, or (3) between any persons or entities other than the Contractor and Subcontractor. The Subcontractor shall promptly call to the attention of Premier any discrepancy or conflict in the Subcontract Documents which affects the Work. In the event of a conflict or discrepancy in the Subcontract Documents, Premier shall determine which takes precedence. This Agreement shall take precedence over the other Subcontract Documents, figure dimensions shall take precedence over scale measurements, large scale details shall take precedence over small scale drawings, and drawings of a later date shall take precedence over those of an earlier date.

§ **1.4** The Subcontractor shall be furnished copies of the Subcontract Documents upon request, but the Contractor may charge the Subcontractor for the reasonable cost of reproduction.

### ARTICLE 2    MUTUAL RIGHTS AND RESPONSIBILITIES
§ **2.1** The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement.

§ **2.2** The Contractor may require the Subcontractor to enter into agreements with Sub-subcontractors performing portions of the Work of this Subcontract.

### ARTICLE 3    CONTRACTOR
### § 3.1 SERVICES PROVIDED BY THE CONTRACTOR
§ **3.1.1** The Contractor shall cooperate with the Subcontractor in scheduling and performing the Contractor's Work to avoid conflicts or interference in the Subcontractor's Work and shall expedite written responses to submittals made by the Subcontractor in accordance with Section 4.1 and Article 5. As soon as practicable after execution of this Agreement, the Contractor shall provide the Subcontractor copies of the Contractor's construction schedule and schedule of submittals, together with such additional scheduling details as will enable the Subcontractor to plan and perform the Subcontractor's Work properly. The Subcontractor shall be notified promptly of subsequent changes in the construction and submittal schedules and additional scheduling details.
§ **3.1.2** The Contractor may provide areas for storage of the Subcontractor's materials and equipment during the course of the Work.

§ **3.1.3** Except as provided in Article 14, the Contractor's equipment will be available to the Subcontractor only at the Contractor's discretion and on mutually satisfactory terms.

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:31:08 on 08/27/2012 under Order No.6282180998_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                            (1433948497)

**§ 3.2 COMMUNICATIONS**
**§ 3.2.1** The Contractor shall promptly make available to the Subcontractor information, including information received from the Owner, which affects this Subcontract and which becomes available to the Contractor subsequent to execution of this Subcontract.

**§ 3.2.2** The Contractor shall not give instructions or orders directly to the Subcontractor's employees or to the Subcontractor's Sub-subcontractors or material suppliers unless such persons are designated as authorized representatives of the Subcontractor.

**§ 3.2.3** [Intentionally omitted]

**§ 3.2.4** If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Contractor, a subcontractor or anyone directly or indirectly employed by them (other than the Subcontractor), the Contractor shall, prior to harmful exposure of the Subcontractor's employees to such substance, give written notice of the chemical composition thereof to the Subcontractor in sufficient detail and time to permit the Subcontractor's compliance with such laws.

**§ 3.2.5** [Intentionally omitted]

**§ 3.2.6** [Intentionally omitted]

**§ 3.3 CLAIMS BY THE CONTRACTOR**
**§ 3.3.1** Liquidated damages for delay, if provided for in Section 9.3 of this Agreement, shall be assessed against the Subcontractor only to the extent caused by the Subcontractor or any person or entity for whose acts the Subcontractor may be liable, including but not limited to any Sub-subcontractor and/or its employees and/or agents, and in no case for delays or causes arising outside the scope of this Subcontract.

**§ 3.3.2** Contractor's claims for services or materials provided the Subcontractor shall require:
    .1    seven days' prior written notice except in an emergency;
    .2    written compilations to the Subcontractor of services and materials provided and charges for such services and materials no later than the fifteenth day of the following month.

**§ 3.4 CONTRACTOR'S REMEDIES**
**§ 3.4.1** If the Subcontractor defaults or neglects to carry out the Work in accordance with this Agreement and fails within three working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after three days following receipt by the Subcontractor of an additional written notice, and without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter due the Subcontractor.

**ARTICLE 4    SUBCONTRACTOR**
**§ 4.1 EXECUTION AND PROGRESS OF THE WORK**
**§ 4.1.1** The Subcontractor shall coordinate, supervise and direct the Work and shall cooperate with Premier in scheduling and performing the Work to avoid conflict, delay or interference with the work of Premier, other subcontractors and the Owner's own forces and separate contractors. The Subcontractor shall be responsible for all construction means, methods, techniques, sequences and procedures. The Subcontractor shall notify Premier in writing of any deficiencies in any other work prior to the commencement of the Work. Any unreported deficiencies shall be deemed accepted by the Subcontractor and shall become the responsibility of the Subcontractor.

**§ 4.1.2** The Subcontractor shall be responsible for its employees, laborers, material suppliers, equipment lessors, agents and representatives. The Subcontractor shall remove from the Project any person or entity under the Subcontractor's control which Premier considers unsatisfactory. The Subcontractor shall assure harmonious labor relations to prevent delay, disruption or interference to the Project, and shall prevent strikes, slowdowns, work interruptions, jurisdictional disputes and other labor disputes relating to the Work.

**§ 4.1.3 .** The Subcontractor shall designate a single representative assigned to the Project who shall be responsible for attending all weekly and other meetings, monitoring schedules and coordinating all activities. The Subcontractor's representative shall have the authority to commit and bind the Subcontractor.

**Init.**

**/**

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:31:06 on 06/27/2012 under Order No.5262180899_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                                                          (1433948497)

3

**§ 4.1.4** The Subcontractor shall communicate with the Owner and the Architect only through Premier.  The Subcontractor shall furnish to Premier periodic progress reports on the Work in such form as requested by Premier, including information on the status of materials and equipment which may be in the course of preparation, manufacture or transit.  Regularly scheduled progress meetings shall be held weekly, unless otherwise directed, and the Subcontractor's attendance is mandatory.  Minutes of such meeting, which are not corrected by Subcontractor, within five business days of their receipt, shall be deemed to be approved, as submitted.  Minutes may be  transmitted by electronic means (if evidence of receipt is available and retained by the sender).

**§ 4.1.5** The Subcontractor shall submit to the Contractor a schedule of values allocated to the various parts of the Work of this Subcontract, aggregating the Subcontract Sum, made out in such detail as the Contractor and Subcontractor may agree upon or as required by the Owner, and supported by such evidence as the Contractor may require.  In applying for payment, the Subcontractor shall submit statements based upon this schedule, unless otherwise agreed herein.

**§ 4.1.6** The Subcontractor agrees that the Contractor and the Architect will each have the authority to reject Work of the Subcontractor which does not conform to the Subcontract Documents. The Architect's decisions on matters relating to aesthetic effect shall be final and binding on the Subcontractor.

**§ 4.1.7** The Subcontractor shall pay for all materials, equipment and labor used in connection with the performance of this Subcontract through the period covered by previous payments received from the Contractor, and shall furnish satisfactory evidence, when requested by the Contractor, to verify compliance with the above requirements.

**§ 4.1.8** The Subcontractor shall take necessary precautions to properly protect the Work of other subcontractors from damage caused by operations under this Subcontract.

**§ 4.1.9** The Subcontractor shall cooperate with the Contractor, and other subcontractors, whose Work might interfere with the Subcontractor's Work. The Subcontractor shall participate in the preparation of coordinated drawings in areas of congestion,  specifically noting and advising the Contractor of potential conflicts between the Work of the Subcontractor and that of the Contractor, or other subcontractors.

**§ 4.1.10** The timing of all Work and material and equipment deliveries shall conform to the Project Schedule.  Premier shall have the right to modify the Project Schedule to vary the sequence or suspend, delay, or accelerate the commencement or execution of the Work.  The Subcontractor shall transfer its laborers to such points as directed by Premier and execute such portions of the Work as may be required to enable other subcontractors to properly carry on their work without delay or interference.

**§ 4.1.11** Within five (5) days of the execution of this Agreement, the Subcontractor shall prepare a detailed, bar chart schedule within the constraints of the Project Schedule, including the stated Substantial Completion date and milestone dates, if any.  The Subcontractor's schedule shall include a detailed breakdown of the planned duration, start date and completion date for each activity and estimated dates for delivery of submittals, materials and equipment.

**§ 4.1.12** If the Subcontractor should (1) fail, refuse or neglect to supply a sufficient number of workers or deliver materials or equipment with such promptness as to prevent delay in the progress of the Work; (2) fail to commence and diligently prosecute the Work and proceed to the point to with the Subcontractor should have proceeded in accordance with the Project Schedule in order to achieve Substantial Completion in accordance with the Project Schedule; (3) fail to commence, prosecute, finish, deliver or install the different portions of the Work in accordance with the Project Schedule, or (4) fail in the performance of any of the material covenants of this Subcontract Documents, Premier shall have the right to direct the Subcontractor to prepare a written plan, for Premier's approval, to accelerate the Work to comply with the Project Schedule, including, without limitation, providing additional labor, expediting deliveries of materials and equipment, performing overtime and/or resequencing the Work, without adjustment to the Subcontract Sum.  Upon Premier's approval of the acceleration plan, the Subcontractor shall accelerate the Work in accordance with the plan.

**§ 4.1.13** If the Work or the Project is delayed, disrupted or interfered with by any act or omission of the Subcontractor or any person or entity for whom the Subcontractor is responsible, the Subcontractor shall compensate the Owner and Premier for, and indemnify them against, all damages, losses and expenses, including attorney's fees.  If the

**Init.**

**/**

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:31:08 on 08/27/2012 under Order No.6282180999_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                                          (1433948497)

4

Subcontract Documents or Owner agreement provides for liquidated damages, and such damages are assessed, Premier may assess damages against the Subcontractor in proportion to the Subcontractor's share of responsibility for the delay, not to exceed the amount assessed against Premier. This paragraph shall not limit the Subcontractor's liability to Premier.

§ 4.1.14 . If the Subcontractor is delayed at any time in the progress of the Work by any act or neglect of the Owner or a separate contractor, or by changes order in the Work, labor disputes, fire, unreasonable acts or omissions of governmental authorities having jurisdiction over the Project, adverse weather conditions not reasonably anticipatable, or other causes beyond the Subcontractor's reasonable control, or any delay authorized by Premier, the Subcontract Time shall be extended by Change Order for the period of delay.

§ 4.1.15 The Subcontract Time shall not be extended due to unsuitable ground conditions, inadequate construction forces, the failure of the Subcontractor to place orders for equipment or materials sufficiently in advance to assure timely delivery, and interruptions to or suspensions of the Work to enable other subcontractors to perform their work. Premier's exercise of its rights under the Subcontract Documents, including but not limited to changes in the Work, regardless of the extent or number of such changes, shall not be construed as delay, disruption or interference with the Work.

§ 4.1.16 Any claim for an extension of the Subcontract Time shall be made in writing to Premier no later than ten (10) days after the commencement of the occurrence giving rise to the claim; otherwise it shall be waived. The Subcontractor shall provide Premier with an estimate of the probable effect of such occurrence on the progress of the Work.

§ 4.1.17 An extension of the Subcontract Time shall be the Subcontractor's sole and exclusive remedy for any claim for delay, interference or disruption; the Subcontractor shall have no claim for damages, losses or expenses against Premier or the Owner unless the cause of the delay is a proximate result of the Owner's act or failure to act.

§ 4.1.18 Premier may suspend the Work upon two (2) days' written notice to the Subcontractor. The Subcontractor shall resume the Work as directed by Premier. If the Project is resumed after being suspended for more than ninety (90) days, the Subcontract Sum shall be equitably adjusted.

§ 4.2 LAWS, PERMITS, FEES AND NOTICES
§ 4.2.1 The Subcontractor shall give notices and comply with laws, ordinances, rules, regulations and orders of public authorities bearing on performance of the Work of this Subcontract. The Subcontractor shall secure and pay for permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Subcontractor's Work, the furnishing of which is required of the Contractor by the Prime Contract.

§ 4.2.2 The Subcontractor shall comply with Federal, state and local tax laws, social security acts, unemployment compensation acts and workers' compensation acts insofar as applicable to the performance of this Subcontract.

§ 4.3 SAFETY PRECAUTIONS AND PROCEDURES
§ 4.3.1 The Subcontractor shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures initiated by the Contractor and with applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property in accordance with the requirements of the Prime Contract. The Subcontractor shall report to the Contractor within three days an injury to an employee or agent of the Subcontractor which occurred at the site.

§ 4.3.2 If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Subcontractor, the Subcontractor's Sub-subcontractors or anyone directly or indirectly employed by them, the Subcontractor shall, prior to harmful exposure of any employees on the site to such substance, give written notice of the chemical composition thereof to the Contractor.

§ 4.3.3 If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Subcontractor, the Subcontractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Contractor in writing. When the material or substance has been rendered harmless, the Subcontractor's Work in the affected area shall resume upon written agreement of the Contractor and

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:31:06 on 08/27/2012 under Order No.5282180999_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                                                                          (1433948497)

Init.

/

5

Subcontractor. The Subcontract Time shall be extended appropriately and the Subcontract Sum shall be increased in the amount of the Subcontractor's reasonable additional costs of demobilization, delay and remobilization, which adjustments shall be accomplished as provided in Article 5 of this Agreement.

§ 4.3.4 [Intentionally omitted]

*(Paragraph deleted)*
### § 4.4 CLEANING UP
§ 4.4.1 The Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract. The Subcontractor shall not be held responsible for unclean conditions caused by other contractors or subcontractors.

§ 4.4.2 As provided under Section 3.3.2, if the Subcontractor fails to clean up as provided in the Subcontract Documents, the Contractor may charge the Subcontractor for the Subcontractor's appropriate share of cleanup costs.

### § 4.5 WARRANTY
§ 4.5.1 The Work shall be executed in accordance with the Subcontract Documents and in a good workmanlike manner. In addition to the Subcontractor's obligations to correct defective or non-conforming Work, the Subcontractor warrants to the Owner and Premier that materials and equipment furnished by the Subcontractor shall be of good quality and new unless otherwise required or permitted by the Subcontract Documents, the Work will be free from defects and will conform to the requirements of the Subcontract Documents, and the Work will comply with all applicable laws, building codes, rules and regulations. Substitutions not properly approved and authorized shall be considered non-conforming.   If, within one year after the date of Substantial Completion of the Work, or by the terms of an special warranty required by the Subcontract Documents, any of the Work is found to be defective or non-conforming with the requirements of the Subcontract Documents, the Subcontractor shall correct it promptly after receipt of a written notice from Premier unless Premier has previously given the Subcontractor a written acceptance of such condition. The Subcontractor's warranty excludes defects or damages caused by normal wear and tear during normal usage, use for a purpose for which the Project was not intended, improper or insufficient maintenance and abuse.  No time limitation shall apply to claims for latent defects and such claims may be made by Premier or the Owner within such time as applicable law permits.

§ 4.5.2 Foregoing warranty is in addition to all special or extended warranties required by the Subcontract Documents or otherwise received from the Subcontractor or any material supplier or manufacturer.

§ 4.5.3  The one year period for correction of defective or non-conforming Work does not constitute a limitation period with respect to the enforcement of the Subcontractor's other obligations under the Subcontract Documents and the foregoing warranty shall not affect, limit or impair the Subcontractor's responsibility for defects in the Work which do not appear within the applicable warranty period. The Subcontractor shall immediately correct and cure, at the Subcontractor's expense, any defects which are reported to the Subcontractor.

§ 4.54 The Subcontractor shall and does hereby indemnify Premier against all claims, damages and expenses, including attorney's fees, incurred by Premier as a result of the Subcontractor's failure to abide by its warranty obligations.

§ 4.55  Neither the acceptance of the Work nor any payment shall constitute a waiver of any claims against the Subcontractor for defective or nonconforming Work, whether latent or apparent, or otherwise act to release or discharge the Subcontractor from liability.

§ 4.56  As a condition precedent to Final Payment, the Subcontractor shall furnish Premier, in form acceptable to Premier, all warranties, operating manuals, and a complete set of record drawings with all field changes noted and, if requested by Premier, a signed affidavit verifying that the Work has been completed in accordance with the Subcontract Documents.

§ 4.57  If required by Premier and included in the Subcontract Sum, the Subcontractor shall furnish a Performance Bond and Labor and Material Payment Bond each in an amount equal to the Subcontract Sum and in such form as shall be required by Premier. The Bonds shall be executed by a responsible surety licensed in the state in which the Project is located and approved by Premier. The Bonds shall remain in effect for a period not less than one (1) year following the date of Substantial Completion or the Subcontractor's warranty period, whichever is longer.  The Subcontractor

**Init.**

**/**

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15.31:08 on 08/27/2012 under Order No.5262180699_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                                                                            (1433948497)

6

shall keep the surety informed of the progress of, and changes in, the Work, and requests for reduction or rele retainage or for Final Payment.

**§ 4.6 INDEMNIFICATION**
**§ 4.6.1** To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Premier, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses, lawsuits (including the defense thereof), and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 4.6.

**§ 4.6.2** [Intentionally omitted]

**§ 4.7 REMEDIES FOR NONPAYMENT**
**§ 4.7.1** If the Contractor does not pay the Subcontractor through no fault of the Subcontractor, within seven days from the time payment should be made as provided in this Agreement, the Subcontractor may, without prejudice to any other available remedies, upon seven additional days' written notice to the Contractor, stop the Work of this Subcontract until payment of the amount owing has been received. The Subcontract Sum shall, by appropriate adjustment, be increased by the amount of the Subcontractor's reasonable costs of demobilization, delay and remobilization.

**ARTICLE 5   CHANGES IN THE WORK**
**§ 5.1** The Owner may make changes in the Work by issuing Modifications to the Prime Contract. Upon receipt of such a Modification issued subsequent to the execution of the Subcontract Agreement, the Contractor shall promptly notify the Subcontractor of the Modification, which shall be binding upon the Subcontractor unless the Subcontractor objects thereto in a notice delivered to the Contractor within three (3) business days of receipt of such Modification by the Subcontractor. Unless otherwise directed by the Contractor, the Subcontractor shall not thereafter order materials or perform Work which would be inconsistent with the changes made by the Modifications to the Prime Contract.

**§ 5.2** The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

**§ 5.3** The Subcontractor shall make all claims promptly to the Contractor for additional cost, extensions of time and damages for delays or other causes in accordance with the Subcontract Documents. A claim which will affect or become part of a claim which the Contractor is required to make under the Prime Contract within a specified time period or in a specified manner shall be made in sufficient time to permit the Contractor to satisfy the requirements of the Prime Contract. Such claims shall be received by the Contractor not less than two working days preceding the time by which the Contractor's claim must be made. Failure of the Subcontractor to make such a timely claim shall bind the Subcontractor to the same consequences as those to which the Contractor is bound.

**ARTICLE 6   MEDIATION AND ARBITRATION**
**§ 6.1 MEDIATION**
**§ 6.1.1** Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Section 4.1.5 and except those waived in this Subcontract, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party

**Init.**

**/**

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:31:08 on 08/27/2012 under Order No.8262160999_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                                        (1433948497)

7

§ 6.1.2 The parties shall endeavor to resolve their claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Subcontract and the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

§ 6.1.3 The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

§ 6.2
*(Paragraphs deleted)*
ARBITRATION
*(Paragraphs deleted)*
§ 6.2.1 Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Section 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 6.1.

§ 6.2.2 Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. Demand for arbitration shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association, and a copy shall be filed with the Architect.

§ 6.2.3 A demand for arbitration shall be made within the time limits specified in the conditions of the Prime Contract as applicable, and in other cases within a reasonable time after the claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations.

§ 6.2.4 Limitation on Consolidation or Joinder.  Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Subcontract shall include, by consolidation or joinder or in any other manner, any person or entity not a party to the Subcontract under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect, the Architect's employee, the Architect's consultant, or an employee or agent of any of them. This agreement to arbitrate and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

§ 6.2.5 Claims and Timely Assertion of Claims  The party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded.

§ 6.2.6 Judgment on Final Award. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

ARTICLE 7   TERMINATION, SUSPENSION OR ASSIGNMENT OF THE   SUBCONTRACT AND ALTERNATIVE PAYMENT PROVISIONS
§ 7.1 TERMINATION BY THE SUBCONTRACTOR
§ 7.1.1 The Subcontractor may terminate the Subcontract for the same reasons and under the same circumstances and procedures with respect to the Contractor as the Contractor may terminate with respect to the Owner under the Prime Contract, or for nonpayment of amounts due under this Subcontract for 60 days or longer. In the event of such termination by the Subcontractor for any reason which is not the fault of the Subcontractor, Sub-subcontractors or their agents or employees or other persons performing portions of the Work under contract with the Subcontractor, the Subcontractor shall be entitled to recover from the Contractor payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

Init.

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:31:08 on 09/27/2012 under Order No.8262180999_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                          (1433948497)

8

### § 7.2 TERMINATION BY THE CONTRACTOR
§ 7.2.1 If the Subcontractor persistently or repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise to perform in accordance with this Subcontract and fails within seven days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after seven days following receipt by the Subcontractor of an additional written notice and without prejudice to any other remedy the Contractor may have, terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient. If the unpaid balance of the Subcontract Sum exceeds the expense of finishing the Subcontractor's Work and other damages incurred by the Contractor and not expressly waived, such excess shall be paid to the Subcontractor. If such expense and damages exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor.

§ 7.2.2 If the Owner terminates the Contract for the Owner's convenience, the Contractor shall deliver written notice to the Subcontractor.

§ 7.2.3 Upon receipt of written notice of termination, the Subcontractor shall:
- .1 cease operations as directed by the Contractor in the notice;
- .2 take actions necessary, or that the Contractor may direct, for the protection and preservation of the Work; and
- .3 except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing Sub-subcontracts and purchase orders and enter into no further Sub-subcontracts and purchase orders.

§ 7.2.4 In case of such termination for the Owner's convenience, the Subcontractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination.

### § 7.3 SUSPENSION BY THE CONTRACTOR FOR CONVENIENCE
§ 7.3.1 The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or interrupt the Work of this Subcontract in whole or in part for such period of time as the Contractor may determine. In the event of suspension ordered by the Contractor, the Subcontractor shall be entitled to an equitable adjustment of the Subcontract Time and Subcontract Sum.

§ 7.3.2 An adjustment shall be made for increases in the Subcontract Time and Subcontract Sum, including profit on the increased cost of performance, caused by suspension, delay or interruption. No adjustment shall be made to the extent:
- .1 that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible;
- .2 that an equitable adjustment is made or denied under another provision of this Subcontract.

### § 7.4 ASSIGNMENT OF THE SUBCONTRACT
§ 7.4.1 In the event of termination of the Prime Contract by the Owner, the Contractor may assign this Subcontract to the Owner, with the Owner's agreement, subject to the provisions of the Prime Contract and to the prior rights of the surety, if any, obligated under bonds relating to the Prime Contract. In such event, the Owner shall assume the Contractor's rights and obligations under the Subcontract Documents. If the Work of the Prime Contract has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted.

§ 7.4.2 The Subcontractor shall not assign the Work of this Subcontract without the written consent of the Contractor, nor subcontract the whole of this Subcontract without the written consent of the Contractor, nor further subcontract portions of this Subcontract without written notification to the Contractor when such notification is requested by the Contractor.

§ 7.4.3 Alternative Method of Payment. Notwithstanding any provision in this Agreement to the contrary, but subject to agreement of the Subcontractor, in the event that the Subcontractor is not paid by the Contractor due to the Owner's failure to pay the Contractor, the Contractor's obligation to the Subcontractor may be fully discharged by its assignment of its claim against the Owner to the Subcontractor, to the extent of the Subcontractor's claim for payment against the Contractor.

Init.

/

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:31:06 on 08/27/2012 under Order No.6292190999_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                                                    (1433946497)

9

**ARTICLE 8   THE WORK OF THIS SUBCONTRACT**
§ 8.1 The Subcontractor shall execute the following portion of the Work described in the Subcontract Documents, including all labor, materials, equipment, services and other items required to complete such portion of the Work, except to the extent specifically indicated in the Subcontract Documents to be the responsibility of others.

Furnish and install static dissipative flooring in accordance with Dynafloor proposal dated 7-20-12
Plans and specifications as prepared by Davison Smith Certo
Project Schedule

**ARTICLE 9   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION**
§ 9.1 The Subcontractor's date of commencement is the date from which the Contract Time of Section 9.3 is measured; it shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Contractor.
(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.) See attached project schedule which will become a binding part of this agreement.

§ 9.2 Unless the date of commencement is established by a notice to proceed issued by the Contractor, or the Contractor has commenced visible Work at the site under the Prime Contract, the Subcontractor shall notify the Contractor in writing not less than five days before commencing the Subcontractor's Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

§ 9.3 The Work of this Subcontract shall be substantially completed not later than      (   ) days after the Subcontractor's Date of Commencement.

*(Insert the calendar date or number of calendar days after the Subcontractor's date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Subcontractor's Work, if not stated elsewhere in the Subcontract Documents.)*

**Portion of Work**                                    **Substantial Completion date**

, subject to adjustments of this Subcontract Time as provided in the Subcontract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*

§ 9.4 With respect to the obligations of both the Contractor and the Subcontractor, time is of the essence of this Subcontract.
§ 9.5 No extension of time will be valid without the Contractor's written consent after claim made by the Subcontractor in accordance with Section 5.3, and no such claim shall be made by electronic means.

**ARTICLE 10   SUBCONTRACT SUM**
§ 10.1 The Contractor shall pay the Subcontractor in current funds for performance of the Subcontract the Subcontract Sum of **One Hundred Twenty-Five Thousand One Hundred Seventy-One Dollars and 00/100 ($125,171.00)**, subject to additions and deductions as provided in the Subcontract Documents.

§ 10.2 The Subcontract Sum is based upon the following alternates, if any, which are described in the Subcontract Documents and have been accepted by the Owner and the Contractor:
*(Insert the numbers or other identification of accepted alternates.)*

N/A

§ 10.3 Unit prices, if any, are as follows:

Init.

/

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 18:31:08 on 08/27/2012 under Order No.6262180999_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                                                      (1433948497)

10

| Description | Units | Price ($ 0.00) |
|---|---|---|
| *(Row deleted)* | | |

*(Table deleted)*
*(Paragraphs deleted)*

## ARTICLE 11   PROGRESS PAYMENTS

§ 11.1 Based upon AIA pay applications for payment submitted to the Contractor by the Subcontractor, corresponding to applications for payment submitted by the Contractor to the Architect, and certificates for payment issued by the Architect, the Contractor shall make progress payments on account of the Subcontract Sum to the Subcontractor as provided below and elsewhere in the Subcontract Documents. Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor and Subcontractor for Work properly performed by their contractors and suppliers shall be held by the Contractor and Subcontractor for those contractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor or Subcontractor for which payment was made to the Contractor by the Owner or to the Subcontractor by the Contractor, as applicable. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor or Subcontractor, shall create any fiduciary liability or tort liability on the part of the Contractor or Subcontractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor or Subcontractor for breach of the requirements of this provision.

§ 11.2 The period covered by each application for payment shall be one calendar month ending on the last day of the month, or as follows:

§ 11.3 Provided an AIA pay application for payment is received by the Contractor not later than the 25th   day of a month (20th day of a month for pencil copy), the Contractor shall include the Subcontractor's Work covered by that application in the next application for payment which the Contractor is entitled to submit to the Architect. The Contractor shall pay the Subcontractor each progress payment within three working days after the Contractor receives payment from the Owner. If the Architect does not issue a certificate for payment or the Contractor does not receive payment for any cause which is not the fault of the Subcontractor, the Contractor shall pay the Subcontractor, on demand, a progress payment computed as provided in Sections 11.7, 11.8 and 11.9.

§ 11.4 If an application for payment is received by the Contractor after the application date fixed above, the Subcontractor's Work covered by it shall be included by the Contractor in the next application for payment submitted to the Architect.

§ 11.5 Each application for payment shall be based upon the most recent schedule of values submitted by the Subcontractor in accordance with the Subcontract Documents. The schedule of values shall allocate the entire Subcontract Sum among the various portions of the Subcontractor's Work and be prepared in such form and supported by such data to substantiate its accuracy as the Contractor may require. This schedule, unless objected to by the Contractor, shall be used as a basis for reviewing the Subcontractor's applications for payment.

§ 11.6 Applications for payment submitted by the Subcontractor shall indicate the percentage of completion of each portion of the Subcontractor's Work as of the end of the period covered by the application for payment.

§ 11.7 Subject to the provisions of the Subcontract Documents, the amount of each progress payment shall be computed as follows:

§ 11.7.1 Take that portion of the Subcontract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Subcontractor's Work by the share of the total Subcontract Sum allocated to that portion of the Subcontractor's Work in the schedule of values, less that percentage actually retained, if any, from payments to the Contractor on account of the Work of the Subcontractor. Pending final determination of cost to the Contractor of changes in the Work which have been properly authorized by the Contractor, amounts not in dispute shall be included to the same extent provided in the Prime Contract, even though the Subcontract Sum has not yet been adjusted;

Init.

/

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:31:08 on 08/27/2012 under Order No.5282180999_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                                                                (1433948497)

11

§ 11.7.2 Add that portion of the Subcontract Sum properly allocable to materials and equipment delivered and suitably stored at the site by the Subcontractor for subsequent incorporation in the Subcontractor's Work or, if approved by the Contractor, suitably stored off the site at a location agreed upon in writing, less the same percentage retainage required by the Prime Contract to be applied to such materials and equipment in the Contractor's application for payment;

§ 11.7.3 Subtract the aggregate of previous payments made by the Contractor; and

§ 11.7.4 Subtract amounts, if any, calculated under Section 11.7.1 or 11.7.2 which are related to Work of the Subcontractor for which the Architect has withheld or nullified, in whole or in part, a certificate of payment for a cause which is the fault of the Subcontractor.

§ 11.8 Upon the partial or entire disapproval by the Contractor of the Subcontractor's application for payment, the Contractor shall provide written notice to the Subcontractor. When the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld.

### § 11.9 SUBSTANTIAL COMPLETION
§ 11.9.1 When the Subcontractor's Work or a designated portion thereof is substantially complete and in accordance with the requirements of the Prime Contract, the Contractor shall, upon application by the Subcontractor, make prompt application for payment for such Work. Within 30 days following issuance by the Architect of the certificate for payment covering such substantially completed Work, the Contractor shall, to the full extent allowed in the Prime Contract, make payment to the Subcontractor, deducting any portion of the funds for the Subcontractor's Work withheld in accordance with the certificate to cover costs of items to be completed or corrected by the Subcontractor. Such payment to the Subcontractor shall be the entire unpaid balance of the Subcontract Sum if a full release of retainage is allowed under the Prime Contract for the Subcontractor's Work prior to the completion of the entire Project. If the Prime Contract does not allow for a full release of retainage, then such payment shall be an amount which, when added to previous payments to the Subcontractor, will reduce the retainage on the Subcontractor's substantially completed Work to the same percentage of retainage as that on the Contractor's Work covered by the certificate.

### ARTICLE 12   FINAL PAYMENT
§ 12.1 Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner.
*(Insert provisions for earlier final payment to the Subcontractor, if applicable )*

§ 12.2 Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.

### ARTICLE 13   INSURANCE AND BONDS
§ 13.1 The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability naming Premier Development Partners, LLC and Valtronic Technologies (USA) Inc. as additional insured:

Upon execution of this Agreement, and prior to the Subcontractor's commencing any work or services with regard to the Project, the Subcontractor shall carry commercial general liability insurance on ISO form CG 00 10 01 (or a substitute form providing equivalent coverage) and the Subcontractor shall provide the contractor with a Certificate of Insurance and Additional Insured Endorsement on the combination of ISO forms CG 2010 10/01 and CG 2037 10/01 (or substitute forms providing equivalent coverage) naming the Contractor and the Owner as Additional Insureds hereunder  Additional insured coverage shall apply as primary insurance with respect to and other insurance afforded to Owner and Contractor.  The coverage available to the Contractor and Owner, as Additional Insureds, shall not be less than $ 3,000,000 Each Occurrence, $ 3,000,000 Aggregate (subject to a per project general aggregate provision applicable to the project), $3,000,000 Products/ Completed Operations Aggregate and $3,000,000 Personal and Advertising Injury limits.  Such insurance shall cover liability arising from premises, operations, independent

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:31:08 on 08/27/2012 under Order No.8282180999_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                                                              (1433948497)

Init.

/

**12**

contractors, products-completed operations, personal and advertising injury, and liability assumed under an insured contract (including the tort liability of another assumed in a business contract). There shall be no endorsement or modification of the Commercial General Liability form arising from pollution, explosion, collapse, underground property damage or work performed by subcontractors. All coverage shall be placed with an insurance company duly admitted in the State of Ohio and shall be reasonably acceptable to Contractor. All Subcontractor insurance carriers must be "A" rated. Coverage shall be afforded to the Additional Insureds whether or not a claim is in litigation.

Each Certificate of Insurance shall provide that the insurer must give the Contractor at least 30 days' prior written notice of cancellation and termination of the Contractor's coverage thereunder. Not less than two weeks prior to the expiration, cancellation or termination of any such policy, the Subcontractor shall supply the Contractor with a new and replacement Certificate of Insurance and Additional Insured endorsement as proof of renewal and said of original policy. Said new and replacement endorsements shall be similarly endorsed in favor of Contractor and Owner as set forth above.

Additionally, and prior to commencement of the Work, the Subcontractor shall provide the Contractor with a Certificate of Insurance showing liability insurance coverage for the Subcontractor and any employees, agents, or Sub-Subcontractors of the Subcontractor for any Workers' Compensation, Employer's Liability and Automobile Liability. In the event any of these policies are terminated, Certificates of Insurance showing replacement coverage shall be provided to Contractor. Coverages shall be no less than the following:

> Worker's Compensation and Employers' Liability Insurance: As required by law
> and affording thirty (30) days written notice to Contractor prior to cancellation or
> non-renewal, providing coverage of not less than $500,000 for bodily injury
> caused by accident and $500,000 for bodily injury by disease.

> Business Auto Liability Insurance: Written in the amount of not less than
> $1,000,000 each accident.

Waiver of Subrogation: Subcontractor shall obtain from each of its insurers a waiver of subrogation on Commercial General Liability in favor of Contractor and Owner with respect to Losses arising out of or in connection with the Work.

*(Table deleted)*
§ 13.2 Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Subcontractor's Work until date of final payment and termination of any coverage required to be maintained after final payment to the Subcontractor, but if such insurance is made on a claims made basis, Subcontractor shall furnish an extended reporting endorsement (tail coverage) for at least two years from and after completion of all Work under the Prime Contract.

§ 13.3 Certificates of insurance acceptable to the Contractor shall be filed with the Contractor prior to commencement of the Subcontractor's Work. These certificates and the insurance policies required by this Article 13 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment as required in Article 12. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Subcontractor with reasonable promptness according to the Subcontractor's information and belief.

§ 13.4 The Contractor shall furnish to the Subcontractor satisfactory evidence of insurance required of the Contractor under the Prime Contract.

§ 13.5 The Contractor shall promptly, upon request of the Subcontractor, furnish a copy or permit a copy to be made of any bond covering payment of obligations arising under the Subcontract.

§ 13.6 Performance Bond and Payment Bond:
*(If the Subcontractor is to furnish bonds, insert the specific requirements here.)*

Init.

/

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:31:08 on 08/27/2012 under Order No.6262180999_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                                                                    (1433946497)

13

| Bond type | Bond amount ($ 0.00) | Bond delivery date | Bond form |
|-----------|---------------------|---------------------|-----------|
| N/A | | | |

### § 13.7
*(Paragraphs deleted)*
**PROPERTY INSURANCE**
§ 13.7.1 When requested in writing, the Contractor shall provide the Subcontractor with copies of such property and equipment insurance policies as are required to be in effect for the Project.

§ 13.7.2 [Intentionally omitted].

§ 13.7.3 Property insurance for the Subcontractor's materials and equipment required for the Subcontractor's Work, stored off site or in transit and not covered by the Project property insurance, shall be paid for through the application for payment process.

### § 13.8 WAIVERS OF SUBROGATION
§ 13.8.1 The Contractor and Subcontractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Owner, the Architect, the Architect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property insurance applicable to the Work. The Subcontractor shall require of any Subcontractor's Sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of the parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

*(Paragraphs deleted)*
**ARTICLE 14   TEMPORARY FACILITIES AND WORKING CONDITIONS**
§ 14.1 The Contractor shall furnish and make available to the Subcontractor the following temporary facilities, equipment and services; these shall be furnished at no cost to the Subcontractor unless otherwise indicated below:

| Temporary Facility, Equipment or Service | Cost, if any ($ 0.00) |
|------------------------------------------|----------------------|
| | |

§ 14.2 Specific working conditions:
*(Insert any applicable arrangements concerning working conditions and labor matters for the Project.)*


### ARTICLE 15   MISCELLANEOUS PROVISIONS

§ 15.1 Where reference is made in this Subcontract to a provision of another Subcontract Document, the reference refers to that provision as amended or supplemented by other provisions of the Subcontract Documents.

### § 15.2
*(Paragraphs deleted)*
*No payments shall be due under this Subcontract for work performed from and after notice by the Contractor to the Subcontractor to stop performance of the Work.*

§ 15.3 Retainage and any reduction thereto is as follows:

Ten Percent (10%)

§ 15.4 The Contractor and Subcontractor waive claims against each other for consequential damages arising out of or relating to this Subcontract, including without limitation, any consequential damages due to either party's termination in accordance with Article 7, except to the extent that Subcontractor's breach of any of the terms, conditions and

Init.

/

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:31:08 on 08/27/2012 under Order No.6262180999_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                                                   (1433948497)

14

provisions hereof shall cause the Contractor to be subject to a claim by the Owner for consequential damages, or liquidated damages.

§ 15.5 Nothing contained in this Agreement, express or implied, is intended or shall be construed to confer upon or give to any person, firm, corporation or other legal entity, other than a party hereto, the Owner and the Owner's mortgagee, if applicable, any rights, remedies or other benefits under or by reason of this Agreement.

**ARTICLE 16   ENUMERATION OF SUBCONTRACT DOCUMENTS**
§ 16.1 The Subcontract Documents, except for Modifications issued after execution of this Subcontract, are enumerated as follows:

§ 16.1.1 This executed Agreement Between Contractor and Subcontractor;

§ 16.1.2 The Prime Contract, consisting of the Agreement between the Owner and Contractor dated as first entered above and the other Contract Documents enumerated in the Owner-Contractor Agreement;

§ 16.1.3 The following Modifications to the Prime Contract, if any, issued subsequent to the execution of the Owner-Contractor Agreement but prior to the execution of this Agreement:

**Modification**                                                                 **Date**


§ 16.1.4 Other Documents, if any, forming part of the Subcontract
*(Paragraphs deleted)*
Documents are as follows:
*(Paragraph deleted)*
*(List any additional documents that are intended to form part of the Subcontract Documents. Requests for proposal and the Subcontractor's bid or proposal should be listed here only if intended to be part of the Subcontract Documents.)*


This Agreement entered into as of the day and year first written above.

CONTRACTOR *(Signature)*                                       SUBCONTRACTOR *(Signature)*
                                                                                            JERRY TORRELLI      PRESIDENT

*(Printed name and title)*                                          *(Printed name and title)*

**Init.**

**/**

AIA Document A401™ – 2007. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:31:06 on 08/27/2012 under Order No.8282180999_1 which expires on 04/25/2013, and is not for resale.
User Notes:                                                                              (1433948497)

**15**

Electronically Filed 11/22/2017 11:24 / CV 17 889462 / Confirmation Nbr. 1232713 / CLDMK